## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

JEREMY JONES                                                                                                        PLAINTIFF

v.                                            CIVIL ACTION NO. 3:04-CV-137-MO

LIBERTY MUTUAL FIRE INSURANCE CO.                               DEFENDANT

### MEMORANDUM OPINION

The plaintiff, Jeremy Jones, moves for entry of judgment, following a favorable jury verdict, on the claim for underinsured motorist ("UIM") benefits pending resolution of the bifurcated bad faith claims so that he may accrue interest on the judgment amount under 28 U.S.C.A. § 1961 (West 2006). The defendant, Liberty Mutual Insurance Company, objects and moves for summary judgment on *all claims*. The defendant argues the plaintiff's settlement with, and written, broad-form release of the tortfeasor from any liability also releases the defendant UIM carrier under the reasoning of *Abney v. Nationwide Mutual Ins. Co.*, 215 S.W.3d 699 (Ky. 2006). The defendant further moves, over the plaintiff's objection, to amend its answer to add the affirmative defense of release and satisfaction. For reasons set forth below, the court concludes the defendant is not entitled to summary judgment, will deny the motion to amend, and will permit discovery of the bifurcated bad faith claims.

### I.

The plaintiff, Jeremy Jones, sustained personal injuries when his automobile was forced off the road in icy conditions by another vehicle operated by Heidi Salsman on January 6, 2002. In September 2002, the tortfeasor's liability insurer offered its policy limits of $25,000, the minimum prescribed by Kentucky law. After providing requisite notice of the offer to his UIM carrier (the defendant), the plaintiff entered the settlement and executed a release in favor of the

tortfeasor and her liability insurer.[1]

On January 15, 2004, the plaintiff's counsel sent the defendant a letter demand for the UIM policy limits of $100,000. According to the affidavit of the defendant's adjuster, Nathan Scott Nunley, the demand package detailed medical expenses of $8,745.66, (an amount which the defendant had already paid as basic reparations benefits), but did not document or mention future medical expenses or a lost wage or impairment claim.[2] In response to the demand, Mr. Nunley advised, by letter dated January 30, 2004, that his analysis of the claim indicated a lesser value and that without additional information to support the demand, the UIM carrier had "no alternative but to deny [the] claim for Underinsured Motorist benefits."[3]

Two weeks later, the plaintiff filed in state court a complaint alleging breach of contract, for the defendant's failure to pay the UIM claim, and bad faith under common law and the Kentucky Unfair Claims Settlement Practices Act, KY. REV. STAT. ANN. § 304.12-230 and -235 (LexisNexis 2006). The defendant removed this action to federal court. This court bifurcated the bad faith claims and stayed discovery on that aspect of the case pending final adjudication of the contract claim. Because the defendant UIM carrier disputed both the negligence of the other driver, Ms. Salsman, as well as the plaintiff's asserted damages, the court submitted these issues

---

[1] In *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895 (Ky. 1993), the Supreme Court of Kentucky held that a UIM insured must notify the UIM carrier of the policy-limits offer and provide the carrier with an opportunity to substitute payment to its insured, i.e., the victim, if the UIM carrier wishes to preserve its subrogation rights against the tortfeasor. See also *Wine v. Globe American Casualty Co.*, 917 S.W.2d 558 (Ky. 1996) for an extended discussion of subrogation in Kentucky.

[2] For basic reparations benefits, see KY. REV. STAT. ANN. § 304.39-070(3) (LexisNexis 2006)).

[3] *See* Ex. 1-B (docket no. 73, part 4) to Def.'s Resp. to Pl.'s Proposed J. and Mot. for Summ. J.

to a jury.[4]  The jury found in favor of the plaintiff and placed damages at $79,863.60.

Although the jury award establishes that UIM benefits are appropriate under the terms of UIM policy, the defendant now asserts the affirmative defense of release and satisfaction in a motion for summary judgment on all claims – both the UIM coverage claim and the bad faith claims.

## II.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The pivotal issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

---

[4]The liability instruction asked whether Ms. Salsman breached the duty of ordinary care as defined in Kentucky – a duty which in certain circumstances, including icy conditions, is qualified by the sudden emergency doctrine.  *See e.g., Regenstreif v. Phelps*, 142 S.W.3d 1, 4 (Ky. 2004) ("The common-law doctrine of 'sudden emergency' attempts to explain to a jury how to judge the allegedly negligent conduct of a person ..., who is suddenly confronted with an emergency situation that allows no time for deliberation.").  Parenthetically, the defendant did not request a comparative negligence instruction.  The plaintiff claimed damages for past medical expenses (not to exceed $10,498.60), pain and suffering (not to exceed $500,000), lost wages (not to exceed $100,000), and permanent impairment of earning capacity (not to exceed $543,980).  The jury awarded the plaintiff $79,863.60, the sum of $9,863.60 in medical expenses, $50,000 pain and suffering, and $20,000 in lost wages.  *See* Jury Verdict (docket no. 69).

**III.**

The defendant argues the plaintiff released his claims against the defendant UIM carrier in the plaintiff's settlement with the tortfeasor. The release instrument executed by the plaintiff not only discharges, by name, the tortfeasor and her insurance company but also discharges "any and all other persons, firms and corporations, whether herein named or referred to or not" from, generally, all liability related to the motor vehicle accident.[5]

In a recent opinion, the Supreme Court of Kentucky held that similar language released an unnamed, joint tortfeasor in a motor vehicle case. *Abney v. Nationwide Mutual Ins. Co.*, 215 S.W.3d 699, 703-04 (Ky. 2006).[6] The *Abney* court reasoned that despite the omission of the joint tortfeasor's name, the release nonetheless satisfied a state statute, KY. REV. STAT. ANN. § 411.182(4), which requires specificity in releases to protect unwitting plaintiffs against inadvertently releasing other tortfeasors.[7] The *Abney* court then relied on the fundamental rule

---

[5] The release states, in relevant part, that the plaintiff, his "heirs, executors, administrators and assigns, release, acquit and forever discharge Heidi Salsman and Nationwide Insurance and any and all other persons, firms and corporations, whether herein named or referred to or not, of and from any and all past, present and future actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, including claims or suits for contribution and/or indemnity, of whatever nature, and all consequential damage on account of, or in any way growing out of any and all known and unknown personal injuries, death, and/or property damage resulting or to result from an accident that occurred on or about 01-06-2002 at or near HWY 44W/NEAR BARDSTOWN RD; TAYLORSVILLE, KY in SPENCER COUNTY. *See* Ex. 1-A (docket no. 73, part 3) to Def.'s Resp. to Pl.'s Proposed J. and Mot. for Summ. J.

[6] The *Abney* release first identified the tortfeasor and pertinent insurance companies by name; then, the document further released "all other persons, firms or corporations liable, or who might be claimed to be liable ... ." *Abney*, 215 S.W.3d at 702.

[7] The statute at issue is titled, "Allocation of fault in tort actions; award of damages; effect of release" and states in relevant part, "A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim *unless it so provides*." KY. REV. STAT. ANN. § 411.182(4) (Lexis/Nexis 2005) (emphasis added). Both parties acknowledge this statute codifies the holding in *Richardson v. Eastland, Inc.*, 660 S.W.2d 7 (Ky. 1983), in which the Supreme Court of Kentucky rejected the rule that the release of one tortfeasor is a release of all joint tortfeasors, consistent with joint and several liability, unless expressly reserved. Instead, the advent of comparative fault necessitated a modern view that a release does not discharge others liable for the same harm, unless it is agreed that it will discharge them. Specifically, the court held, "Unless the release shows

that the contract language expresses the parties' intentions and that courts should effectuate the contract's plain and unambiguous terms. *Id.*

The plaintiff argues the narrow holding in *Abney* applies only to a release among joint tortfeasors and has no relevance to the plaintiff's separate contractual claims against the UIM-carrier defendant. *See Kentucky Farm Bureau Mutual Ins. Co. v. Ryan*, 177 S.W.3d 797, 801 (Ky. 2005) (stating that "the legislature was quite clear in its intent to exclude contract actions, including those for ... UIM coverage, from the scope of KRS 411.182."). The defendant responds that although it seems inapplicable on its face, the *Abney* opinion provides this court with a decisional approach of interpreting the release under general rules of contract interpretation. The defendant urges this court to extend the *Abney* court's second rationale to this UIM coverage claim and hold that the release, by its plain and unambiguous terms, releases the plaintiff's UIM carrier from first-party contractual, and bad faith, liability.

The court concludes, however, that the *Abney* opinion provides too tenuous support for the extended construction the defendant seeks. Instead, the release here should be construed in accord with Kentucky's motor vehicle insurance law, namely, the Motor Vehicle Reparations Act ("MVRA"), which *mandates* UIM coverage and addresses the kind of settlement and release involved in this action.

The plaintiff's settlement with the sole tortfeasor and her liability carrier proceeded in accordance with the requirements of *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895 (Ky. 1993), which is now codified in the MVRA, KY. REV. STAT. ANN. § 304.39-070 (Lexis/Nexis 2006). In

---

on its face that others not mentioned in the release are also released or that the claimant has been fully compensated for all damages and the release constitutes payment in satisfaction of all claims, the release shall not be interpreted as providing a defense to a third party not expressly covered." *Richardson*, 660 S.W.2d at 9.

*Coots*, the Supreme Court of Kentucky prospectively held that if a motor vehicle accident victim intends to pursue UIM benefits, the victim must, before entering a settlement with the tortfeasor and liability insurer, notify the UIM carrier and provide it the opportunity to substitute payment to the victim. By substituting its payment for the tortfeasor's settlement payment – a settlement that would necessarily include the victim's release of the tortfeasor from future claims – the UIM carrier is able to protect its contractual right to subrogate itself to the claims of its insured, (i.e., the victim) and seek later reimbursement from the tortfeasor.[8]

In the event the UIM carrier declines to substitute payment, as here, the MVRA contemplates, and for that matter *the parties intend*, the pursuit of claims against the UIM carrier. To graft *Abney's* reasoning to a *Coots* procedure would be an artificial turn-about in interpretation of the intention of the parties. The *Coots* court rejected such "tunnel vision" and the literal application of words (in the MVRA) "without regard to the resulting absurdity," *Coots*, 853 S.W.2d at 899.[9] "When all else is said and done, common sense must not be a

---

[8]In *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 901 (Ky. 1993), the Supreme Court of Kentucky explained that the interests of the UIM carrier and insured are inimical when presented with the prospect of settlement with the tortfeasor. This becomes clear when one considers the position of the parties.

For UIM coverage, the damages inflicted must exceed the tortfeasor's liability insurance; and, after making a UIM payment to its insured (that is, the accident victim), the UIM carrier, by contractually subrogating itself to the claims of its insured, has an interest in later recovering its UIM payment against the tortfeasor's other assets. Conversely, the UIM insured's interest is to settle for the tortfeasor's policy limits and to avoid the delay and expense of litigation; but, consideration in such a settlement must necessarily include the insured's agreement to release all future claims – a category which encompasses the UIM carrier's subrogation claim – against the tortfeasor. *Id*., at 901-02.

In many cases, however, the right of subrogation is illusory unless the tortfeasor has substantial assets beyond the liability policy limits. Thus, in Kentucky, the UIM carrier's right of subrogation is subordinated to the conflicting interest of its insured, the victim, to settle with the tortfeasor for policy limits. *Id*., at 902.

[9]In *Coots*, the UIM carrier argued that it had no UIM liability because its insured's release and settlement with the tortfeasor precluded the possibility of a *judgment* against the tortfeasor in excess of his liability policy limits. *Coots*, 853 S.W.2d at 897. Despite the statutory, textual basis for the UIM carrier's argument, the state court held the Motor Vehicle Reparations Act ("MVRA") subordinated a UIM carrier's interest in subrogation to the interests of the parties in the underlying tort claim to settlement. "If UIM coverage is to accomplish its remedial purpose as intended by the MVRA, the UIM carrier's contractual subrogation right must not obstruct the UIM insured's right to settle for the policy limits even if it means releasing subrogation." *Id*., at 901.

stranger in the house of the law." *Id*., at 900 (quoting *Cantrell v. Kentucky Unemployment Ins. Co.*, 450 S.W.2d 235, 236-37 (Ky. 1970)). Contrary to the defendant's argument, *Abney* does not logically extend to this case, and a decisional approach to this case, if not controlling precedent, is to be found in *Coots* rather than *Abney*.

The defendant's argument is further flawed by equating tort motor vehicle claims with first-party contractual claims against an insurer and the insurer's duties of exercising good faith and fair dealing as required under Kentucky statutory and common law. In *Ohio Casualty Insurance Co. v. Ruschell*, 834 S.W.2d 166 (Ky. 1992), the Supreme Court of Kentucky considered whether a general release executed by a motor vehicle accident victim in favor of the tortfeasor also released a no-fault carrier from future liability to the victim for basic reparations benefits.[10] The *Ruschell* court rejected the argument that the construction of a release in the context of tort law offers analogous support for construing the release in favor of a no-fault carrier. The *Ruschell* court reiterated, "In short, we are dealing with apples and oranges." *Id*., at 167 (quoting *Holzhauser v. West Ameican Ins. Co.*, 772 S.W.2d 650 (Ky. Ct. App. 1989)).

The scope of a release is determined "by the intent of the parties as expressed in the release instrument, *considered in the light of the nature of the claims and the objective circumstances underlying the execution of the instrument*." *Id.*, at 169 (quoting *Cingoranelli v. St. Paul Fire & Marine Ins.*, 658 P.2d 863 (Colo. 1983)). The *Ruschell* court reasoned that the only similarities between the tort and no-fault claims were coincidental: they both arose from a motor vehicle accident, but "the two claims are distinct in their purpose and effect." *Id.* "Given

---

[10] *See* KY. REV. STAT. ANN. § 304.39-020 *et seq*. (Lexis/Nexis 2006), which provides, generally, that a covered party injured in a motor vehicle accident has a right to receive reimbursement of medical expenses, work loss, and other specified benefits, regardless of fault.

-7-

the statutory scheme, it is simply unreasonable to assume that an automobile accident victim executing a general tort release intends thereby to release [no-fault] claims that are unrelated to the fault principles of tort liability." *Id*.

*Coots* supplies, here, the objective circumstances underlying the execution of the plaintiff's release. There is no indication the settlement was intended as full satisfaction. To the contrary, the policy limits settlement was a necessary step toward pursuing the UIM claim, in accordance with *Coots* and the MVRA. Because the *Abney* court's reasoning is not applicable to this contract action for UIM benefits or the first-party bad faith claims, the court will deny the defendant's motion for summary judgment.

In addition, the court concludes the defendant's motion is untimely and unfairly prejudicial to the plaintiff. The Supreme Court of Kentucky decided *Abney* on the merits in November of 2006, several months before the jury trial in this matter. Further, if the release is so clear as to release the claim for UIM benefits, as the defendant contends, it is inconsistent at best for the UIM defendant to assert this affirmative defense not at the pleading stage of this action but after a jury trial and verdict in favor of the plaintiff. The court concludes the defendant's delay in asserting the affirmative defense of the release is not excused by the timing of the *Abney* opinion. A motion to amend prior to trial would perhaps present a closer question, but that is not the situation in this case. Accordingly, the court will deny the motion to amend, because the defendant fails to show excusable delay and additionally because an amendment to the pleadings would be futile. The court will therefore enter the judgment tendered by the plaintiff.

Finally, the defendant argues it is entitled to summary judgment on the claim of bad faith

failure to settle because the defendant acknowledged the plaintiff's demand, requested information, but did not deny the claim before the plaintiff filed this action. Absent explicit denial of the claim, it is argued, the plaintiff cannot prove an essential element of bad faith, i.e., that the defendant lacked a reasonable basis in law or fact for denying the claim. *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). The court disagrees that Mr. Nunley's correspondence in response to the demand package supports this factual contention. The defendant through its course of conduct effectively denied the claim. Whether the defendant lacked a reasonable basis for the denial, however, remains to be seen. In the court's view, the defendant's motion for summary judgment, before any discovery of the claim file, is premature. The court will, therefore, deny the present motion for summary judgment and allow discovery to proceed on the common law and statutory bad faith claims.

    DATE:

cc: Counsel of Record