**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

JEREMY JONES                                                                                          PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:04-CV-137-JDM

LIBERTY MUTUAL FIRE  INSURANCE CO.                                              DEFENDANT

**MEMORANDUM OPINION**

The defendant, Liberty Mutual Insurance Company, moves for summary judgment on claims of bad faith asserted by its insured, the plaintiff, Jeremy Jones, for Liberty Mutual's refusal to pay a claim under a policy providing $100,000 underinsured motorist ("UIM") coverage.  The court presided over a jury trial on the underlying accident claim before permitting discovery on the bad faith claims.  The jury found for the plaintiff and awarded $79,853.60 in damages, an amount which triggers UIM coverage, as it exceeds the tortfeasor's $25,000 liability policy.  In its dispositive motion, Liberty Mutual contends that because the UIM claim was "fairly debatable," the bad faith claims fail as a matter of law.[1]  The plaintiff objects to summary judgment both on the merits and on the ground that the motion is premature in light of the plaintiff's pending motion to compel written discovery.  For reasons set forth below, the court concludes Liberty Mutual's motion is ripe as well as meritorious.  Accordingly, the court will grant the motion for summary judgment.

**I. Standard of Review**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[1]*See Farmland Mutual Ins. Co. v. Johnson*, 36 S.W.3d 368, 374 (Ky. 2000) ("An insurer is entitled to challenge a claim which is fairly debatable on the law or the facts.").

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The pivotal issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## II. Factual Background

The plaintiff, Jeremy Jones, sustained personal injuries on January 6, 2002, when he was forced off the road to avoid a collision with another vehicle that lost control in icy conditions.  In due course, the tortfeasor's insurer paid the plaintiff $25,000, the liability policy limit, after which the plaintiff turned his attention to his own insurer for fuller compensation of his injuries.  At the accident scene, the plaintiff's chief complaint was a head injury, described in the ambulance record as a bump on the back of the head with tenderness and swelling, but without a loss of consciousness.[2]  Today, the plaintiff describes it as a brain injury since receiving further treatment and diagnosis (during the course of this litigation) of a mild traumatic brain injury.[3]  Liberty Mutual maintains the view, on the other hand, that the plaintiff sustained merely a soft tissue injury rather than a traumatic brain injury.[4]

---

[2] Exhibit to Mem. in Support of Mot. for Sum. J., Settlement Package, Ambulance Run Report, Doc. 130-4 at 81 (p. 17 of 26).

[3] Compare Resp. to Def's Mot. for Sum. J., Doc. 138 at 6 n.10 and at 7 n.18, with Mem. in Support of Mot. for Sum. J., Doc. 130 -2 at 4 (p. 9 of 38) discussing Dr. Richard Edelson's report (ex. E to Resp. to Def's Mot. for Sum. J., Doc. 138-10).

[4] For example, Liberty Mutual states the independent medical examinations "raised serious doubt about Plaitniff's claim that he sustained a brain injury." Mem. in Support of Mot. for Sum. J., Doc. 130-2 at 16 (p. 21 of 38).  A soft tissue injury was Liberty Mutual's initial assessment.  Doc. 130-2 at 3, 14 (pp. 8, 19 of 38).

On or about January 15, 2004, the plaintiff sent to Liberty Mutual a demand packet requesting $100,000, the policy limit of his UIM coverage.  The packet included medical records which showed a course of chiropractic treatment and a subsequent diagnosis from two treating physicians, Dr. Ghias M. Arar, neurologist, and Dr. John W. Melton, neurologist, of post-concussive headache syndrome.[5]  The medical records indicated the last date of treatment preceded the demand packet by nearly one year.[6]

In response, by letter dated January 30, 2004, Liberty Mutual denied payment of the claim absent additional information that might add value to the claim.  The letter tersely explained that Liberty Mutual valued the claim under the amount of compensation the plaintiff had already received (the $25,000 settlement and less than $9,000 in medical expenses).[7]

A scant two weeks later, on February 12, 2004, the plaintiff filed a complaint in state court and alleged breach of contract and bad faith under common law and the Kentucky Unfair Claims Settlement Practices Act ("UCSPA"), KY. REV. STAT. ANN. §§ 304.12-230 and 235.  Liberty Mutual removed the action to federal court.

In the early proceedings, this court bifurcated discovery and adjudication of the bad faith claims from the underlying accident claim.  In early written discovery, June and September 2004, the plaintiff disclosed an intention to prove as much as $2.2 million in compensatory damages for a permanent disability in the form of a traumatic brain injury.  The plaintiff supported the brain injury claim with a report of a neuropsychologist, Richard Edelson, who

---

[5]Exhibits to Mem. in Support of Mot. for Sum. J., Doc. 130-5 at 103 (p. 13 of 26) and Doc. 130-7 at 142 (p. 1 of 23).

[6]Dkt. 130-2 at p. 7 of 38.

[7]Exhibit to Mem. in Support of Mot. for Sum. J., Doc. 130-4 at 74 (p. 10 of 26).

diagnosed a mild closed head injury.[8]

In April 2005, the court conducted a settlement conference. The plaintiff demanded the UIM policy limit and Liberty Mutual made no counter-offer. Discovery ensued of medical records from Karen Bloom, M.D., a specialist in physical medicine and rehabilitation, who diagnosed the plaintiff with a permanent brain injury.[9] Upon Liberty Mutual's motion, the plaintiff submitted to an independent medical examination in October 2005, with Dr. Andrew Cooley, M.D., a forensic psychiatrist. Dr. Cooley concluded the plaintiff did not sustain a brain injury in the accident.[10]

In January 2006, the parties attempted to resolve the claim through private mediation. The plaintiff demanded $750,000 for a global settlement or, again, the UIM policy limit to release the contract claim only. Liberty Mutual made its first and only settlement offer for $10,000. The parties then proceeded to a jury trial in March, 2007.

At trial, the plaintiff requested more than $1.1 million in compensatory damages.[11] Liberty Mutual contested both the extent of the damages as well as liability.[12] In an

---

[8] Dkt. 130-2 at p. 10 of 38.

[9] Mem. in Support of Mot. for Sum. J., Doc. 130-2 at 5 (p. 10 of 38).

[10] Dkt. 138-12 at p 21 of 23.

[11] Specifically, the plaintiff claimed:

| | |
|---|---|
| Past medical expenses: | $ 10,498.60 |
| Pain and suffering: | $500,000.00 |
| Lost wages: | $100,000.00 |
| Permanent impairment of earning capacity, | $543,980.00 |

[12] The liability instruction asked whether the defendant driver breached the duty of ordinary care as defined in Kentucky – a duty which in certain circumstances, including icy conditions, is qualified by the sudden emergency doctrine. *See e.g., Regenstreif v. Phelps*, 142 S.W.3d 1, 4 (Ky. 2004) ("The common-law doctrine of 'sudden emergency' attempts to explain to a jury how to judge the allegedly negligent conduct of a person ..., who is suddenly confronted with an emergency situation that allows no time for deliberation."). Liberty Mutual did not request a comparative negligence instruction.

interrogatory verdict, the jury found that the other driver was negligent and awarded $79,863.60 in damages, consisting of $9,863.60 in medical expenses, $20,000 in lost wages, and $50,000 for pain and suffering.  After deducting $35,000 from the award based on the tortfeasor's liability insurance amount and no-fault medical expenses of $10,000, the court entered a judgment for $44,863.60 – less than half of the UIM policy limit.

Since the jury verdict, the parties have conducted discovery, including the production of the Liberty Mutual claims file and the deposition of its adjuster, Mr. Nunley, who has handled the claim from the outset.  The plaintiff has filed a motion to compel written discovery to gain any evidence of information supporting punitive damages.  In turn, Liberty Mutual has filed a motion for summary judgment on all extra-contractual claims.

### III.  Motion for Summary Judgment

Liberty Mutual moves for summary judgment on the ground that it has had at all times a reasonable basis for the denial of the UIM claim, as well as for the subsequent defense and settlement posture during the course of this litigation.  Essentially, Liberty Mutual viewed the UIM claim from the outset as a pain and suffering case involving a soft tissue injury, as opposed to the plaintiff's claim of a traumatic brain injury, and relies on the sequence of events related to the medical records and diagnoses to show the reasonableness of its defense.

In response to the motion, the plaintiff contends Liberty Mutual unlawfully forced him to file this action to recover UIM benefits and failed in a number of other ways to honor its implied covenant of good faith and fair dealing as well as its statutory duties of fair claims handling.  The plaintiff supports this claim with the report of retained expert witness, the Honorable Michael O. McDonald, retired trial and appellate judge of the Kentucky Court of Justice.  According to the

expert disclosure, Liberty Mutual failed, in short:  1)  to appropriately investigate the UIM claim by disregarding lost wages and disregarding the diagnoses of treating physicians; 2) to fairly evaluate the UIM claim by giving no value to the most significant injuries; 3) to reevaluate the claim during discovery which yielded additional medical information; and 4) to inform the plaintiff of the reasons for evaluating the claim in the manner it did.  The expert disclosure further suggests such conduct was motivated by an incentive bonus program on loss payments claims which encouraged subjective undervaluing of claims in reckless disregard to the insured's rights.

**IV. Analysis**

A single test for bad faith exists in Kentucky regardless whether the claim arises under common law or statute.  *Rawe v. Liberty Mutual Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2006). This test requires the insured to show three elements: 1) that the policy terms obligate the insurer to pay the claim; 2) that the insurer's denial lacks a reasonable basis in law or fact; and 3) that the insurer knowingly or recklessly acted without a reasonable basis for denying the claim.  *Id*. at 527; *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993); *see also Davidson v. American Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2000) (describing *Wittmer* as the leading case on Kentucky bad faith).  Here, Liberty Mutual is clearly obligated to pay a UIM claim because the jury verdict established the tortfeasor was underinsured to fully compensate the plaintiff's injuries, i.e., there is no coverage issue.  Thus the first element is not in controversy.

An insurer is "entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts."  *Wittmer*, 864 S.W.2d at 890 (internal quotations omitted); *see also Farmland Mutual Ins. Co. v. Johnson*, 36 S.W.3d 368, 375 n.14 (Ky. 2001) (discussing the dissent in

*Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 847-48 (1986), in which Justice Leibson states that "if the evidence presents a factual issue with respect to the validity of the insured's contract claim, this establishes the legitimacy of the insurance company's denial thereof and the tort claim should not be submitted to the jury.")).

The present controversy principally stems from a factual dispute over the severity of the head injury, rather than the current status of the law of insurance coverage.  Therefore the pivotal issue is whether Liberty Mutual was entitled to debate, on the facts, the payment of a claim under the UIM coverage purchased by the plaintiff.  Liberty Mutual argues the evidence fails to satisfy the second element of bad faith – that the insurer lacked a reasonable basis for denying the UIM claim.  Rather, Liberty Mutual argues the UIM claim was fairly debatable at all times, both before and during litigation.

Having presided over the jury trial in this matter and having carefully reviewed the parties' legal memoranda and supporting exhibits, the court is firmly persuaded that even under the most liberal view of the plaintiff's evidence, a reasonable basis has existed since the initial demand for Liberty Mutual's claims handling, litigation defense and settlement posture and that, accordingly, there is an absence of proof on the claim that Liberty Mutual's conduct constitutes bad faith.  Indeed, the court does not consider this a close or difficult question.

The court will begin its discussion with the plaintiff's pre-litigation demand for the UIM policy limit.  The plaintiff criticizes Liberty Mutual's failure to request a medical or wage authorization despite having notice that the plaintiff was absent from work for three months and that a CT scan and x-rays were missing from the medical records provided.  In its claim valuation, Liberty Mutual used a computer program which the plaintiff contends was ill-

equipped to calculate a mild traumatic brain injury and erroneously designated the plaintiff's dominant hand.  The plaintiff argues such conduct – a failure to adequately investigate and to fairly evaluate –  constitutes bad faith.  The court disagrees.  Such nit-picking, in hindsight, of the fine details of claims assessment during an extremely brief period falls short of the mark.

Liberty Mutual responded reasonably to the demand packet, which set forth an unsubstantiated demand, with inadequate attribution to reliable sources, to support the position that the UIM claim was worth $100,000.  In *Wittmer*, the Supreme Court of Kentucky stated that an insurer's legal responsibility is limited to payment upon proof of loss.  "Although an insurer is under a duty to promptly investigate and pay claims where it has no reasonable grounds to resist in good faith, neither this duty nor any provision of the UCSPA requires the insurer to assume responsibility to investigate the amount of the claimant's loss for the claimant ... ."  864 S.W.2d at 891-92.  Liberty Mutual's conclusion that the plaintiff had already been fully compensated for his injury was reasonable.  The records indicated the plaintiff had not received any treatment for nearly a year and that he had been diagnosed with post-concussive headache syndrome.  If Liberty Mutual had requested additional medical records it could not have discovered a diagnosis of mild traumatic brain injury because neither Dr. Bloom nor any other medical provider had yet made such a diagnosis.

Once suit was filed two weeks later, Liberty Mutual zealously defended itself at every turn, yet such litigation conduct did not rise to the level of bad faith.  There was adequate medical evidence to support the defense view that the plaintiff sustained a run-of-the-mill soft tissue injury – and this view was vindicated by a jury verdict well below the UIM policy limit.  Contrary to the plaintiff's argument, the evidence in this case of a traumatic brain injury is itself

a fact subject to fair debate. There is no authority the insurer must accept the care and diagnosis of a treating physician at face value and forego scrutiny if the basis and reliability of the diagnosis is susceptible to question. Brain injuries are not easy to assess and often require detailed neuropsychological testing to evaluate. Skepticism is reasonable for an insurer called upon to pay policy limits in an area of injury where diagnosis may be uncertain, i.e., "fairly debatable."

At trial, the evidence presented significant issues of the plaintiff's credibility, as borne out during cross-examination of the plaintiff, as well as a material debate concerning the extent of the plaintiff's head injury. In the court's view, this debate is reflected in the jury verdict which awarded only twenty percent of past lost wages claimed. The jury rejected outright the claim that the plaintiff suffered a permanent impairment of earning capacity. The plaintiff repeatedly minimizes the import of the jury's limited award. The court must observe, however, that the jury's wage findings in particular are consistent with the defense view the plaintiff merely sustained a soft tissue injury and, conversely, actually undermine any claim the plaintiff sustained a traumatic brain injury.

Despite the plaintiff's emphasis on principles of claims handling and the public trust to settle claims where liability is reasonably clear, the court is equally mindful that the insurer's duty of good faith and fair dealing with an insured coexists with the insurer's duty owed to all of its policyholders to identify inflated, exaggerated, and false claims. Here, the jury awarded the plaintiff *only 7 percent of claimed damages*. Still, the plaintiff argues Liberty Mutual's failure to offer more in settlement cannot be justified by the fact the jury verdict fell short of the UIM policy limit. The reality of this case is, however, the plaintiff's counsel simply overvalued the

UIM claim. The total damage award was much closer to the value Liberty Mutual placed on the claim than to the plaintiff's assessment. To argue, as the plaintiff suggests, that the onus lay exclusively on Liberty Mutual to settle the UIM claim at a higher value than actually offered, regardless of the reasonableness of the demand, belies the realities of litigation and the impact of a party's negotiating posture on an eventual settlement.

The jury award itself verifies the reasonableness of Liberty Mutual's debate that this case posed a value more in the range of a typical, motor vehicle, pain and suffering case. Had Liberty Mutual offered the UIM policy limit as demanded, it would have actually overpaid the claim. Had Liberty Mutual likewise yielded to an inflated settlement demand with an offer more commensurate with the plaintiff's view of the case, it would have likely overpaid the claim.

In the court's view, the UIM claim was clearly debatable on the facts and thus fails as a matter of law to satisfy *Wittmer's* second element essential to proof of bad faith.

As a final matter, the court concludes the plaintiff's motion to compel discovery should be denied. A punitive damages claim is secondary to the threshold question whether the insurer's conduct constitutes bad faith. *See Wittmer*, 864 S.W.2d at 890-91. The court has concluded Liberty Mutual's denial of the UIM claim was fairly debatable on the facts of the case, in short, given the disputed medical evidence and the plaintiff's credibility. Therefore, additional discovery of the insurer's institutional policies has no bearing on the basis for the court's conclusion.

The court will enter a separate order.

DATE:

cc: Counsel of Record